[No. 48161-4-I. Division One. November 12, 2002.]

KING COUNTY, *Respondent*, v. WILLIAM A. SHEEHAN III, ET AL., *Appellants*.

328

*Elena L. Garella*, for appellant Sheehan.

*Patrick D. Brown*, for appellant Rosenstein.

*Norm Maleng, Prosecuting Attorney*, and *Janine E. Joly, Deputy*, for respondent.

*Michael J. Killeen, Michele L. Earl-Hubbard*, and *Alison P. Howard* on behalf of Allied Daily Newspapers of Washington, Inc., the Associated Press Washington bureaus, and Washington Association of Broadcasters, amici curiae.

KENNEDY, J. — Appellants William A. Sheehan III and Aaron Rosenstein maintain controversial websites that are critical of police agencies in Washington. They submitted public records act requests seeking a list of the full name and rank of every police officer employed by King County. The County refused the request and filed suit to enjoin disclosure, contending that the information was exempt from disclosure because it would hinder effective law enforcement and infringe on the police officers' right to privacy. The trial court granted the County's suit in part and

denied it in part, ordering the County to provide only the last names and ranks of all King County police officers. In a subsequent proceeding, a different judge awarded attorney fees to appellants but denied statutory penalties on the ground that the County acted in good faith when it denied the disclosure request. Both sides appeal. Sheehan and Rosenstein contend, and we agree, that the trial court erred by refusing to order the County to disclose the full names of the police officers it employs. They also contend, and we agree, that there is no good faith exemption from the statutory penalty. These rulings essentially moot the County's cross-appeal, in which the County contends that the trial court erred by requiring that even the officers' last names be disclosed and by awarding Sheehan and Rosenstein the full amount of their attorney fees. Accordingly, we reverse the trial court's rulings insofar as they conflict with this opinion, and remand for entry of an order requiring the County to disclose the full names and ranks of the police officers the county employs.[1] We also direct the trial court to impose a statutory penalty of at least $5 and not more than $100 for each day that Sheehan and Rosenstein have not been provided with the records they sought, provided however, that no penalty shall be imposed for the days from June 7, 2001, to the date this court issues its mandate, a commissioner of this court having stayed that portion of the trial court's order requiring disclosure of the last names and ranks of all police officers hired by the County, pending the outcome of this appeal. We award Sheehan and Rosenstein their reasonable attorney fees and costs for their appeal and for defending against the County's cross-appeal.

---

[1] By requiring the County to disclose the "full names" of its police officers, we mean the full name as listed on the records themselves. To use a hypothetical example (with apologies to the late, great American poet of the same name), if an officer is listed on the records as "T.S. Eliot" only that name need be disclosed. The County is not required to prepare a new record identifying the hypothetical officer as "Thomas Stearns Eliot." *Cf.*, *Limstrom v. Ladenburg*, 136 Wn.2d 595, 604 n.3, 963 P.2d 869 (1998) (public records act does not require agency to go outside its own records and resources to try to identify or locate the record requested).

## FACTS

In May 2000, William A. Sheehan III submitted public records requests to local police agencies throughout the Puget Sound area asking for a list of the full names of every law enforcement officer and attorney employed by each of the agencies, along with job titles and pay scales for each position. Almost all of the police agencies complied with Sheehan's requests.

The King County Sheriff's Office responded to Sheehan's request within the required five-day period by acknowledging the request and informing him that it was being reviewed. The Sheriff's Office did provide some portions of the information Sheehan requested, including pay scales for each rank within the Sheriff's Office. In an attempt to learn what information might be obtainable by a person who had access to the full names of law enforcement officers, a Sheriff's Office employee determined that it was possible to obtain officers' home addresses and other personal information via the public access section of the King County Assessor's Office.

The King County prosecutor, acting on behalf of the sheriff, denied the remainder of Sheehan's request by letter dated July 20, 2000. The letter stated that the list of officers' full names was exempt under RCW 42.17.310(1)(b) because it "would allow access to additional information regarding individual employees that is both highly offensive and not of legitimate concern to the public." Clerk's Papers at 34. The letter also stated that the list was exempt under RCW 42.17.310(1)(d) because "release of the list will hinder effective law enforcement because it will make identifying information beyond just the names of officers accessible." *Id*. Accordingly, the county refused to release any portion of the names of its officers, except for the sheriff himself; neither did it release officer ranks at that time.[2]

---

[2] While this appeal was pending, the county sent the appellants a 22-page list of ranks, containing no names, however. A commissioner of this court had, by then,

Sheehan threatened to bring suit under the public records act unless the County released the requested records. In response, the County filed a complaint and motion to enjoin examination of records, repeating its assertions that the list of the full names of all law enforcement officers employed by King County was exempt under RCW 42.17.310(1)(b) and (d), and also contending that the release of officers' names would threaten their safety and privacy and would compromise undercover operations. Sheehan answered and filed a counterclaim for release of the requested records and for attorney fees and statutory penalties.

After Sheehan was served with the County's complaint and motion to enjoin, King County received a public records request from Aaron Rosenstein, also seeking a list of law enforcement officers in King County. The County responded to this request in the same manner as it had responded to Sheehan's request: it sent a letter denying Rosenstein access to the list and explaining its position regarding the applicable exemptions. Rosenstein then moved to intervene in the County's lawsuit against Sheehan. The County did not oppose the motion, and Rosenstein was allowed to intervene.

It is undisputed that both Sheehan and Rosenstein run controversial internet websites that are highly critical of police, and that Mr. Sheehan, at least, has previously posted identifying information regarding King County police officers, including their home addresses, on his website. The record contains a declaration from an undercover officer (identified in the declaration only by his or her initials, "R.T.") stating that after one suspect was arrested as the result of a recent undercover police operation, an undercover officer's car description and license plate were published on an internet website for other suspects to read. The declaration does not allege that this information was published on either Sheehan or Rosenstein's website;

---

issued an order staying enforcement of the order that King County release the last names of its police officers pending the outcome of this appeal.

rather, the declaration illustrates the problems that police already face in the internet age, and the County's concerns that this kind of interference with undercover operations could happen with more frequency if it is required to disclose the full names of all of its police officers, some of whom are working undercover at any given time.

A judge of the King County Superior Court decided the merits of the case at a hearing on November 17, 2000. The court made the following conclusions of law:

1. The court must read the Public Disclosure Act and the Freedom of Information Act together and must consider public policy;

2. Under the circumstances of this case and based on defendant William Sheehan's statements regarding his intended use of the information, the Court must balance the interests of disclosure with the interests in effective law enforcement;

3. The Court concludes the following relief is authorized under RCW 42.17.310(1)(d) and the Court's ruling is based solely on that exemption.

Clerk's Papers at 155.

The court granted the County's motion in part and denied it in part, ordering the County to provide the surnames and ranks of all King County police officers, but allowing it to withhold the officers' first and middle names. Sheehan and Rosenstein moved for reconsideration, which the trial court denied.

The remainder of the case was then assigned to a different trial court judge. Sheehan and Rosenstein moved for an award of attorney fees and penalties under RCW 42-.17.340(4). The court found that Sheehan and Rosenstein were entitled to the full amount of requested fees, with the exception of fees associated with the unsuccessful motion for reconsideration and the notice of appeal. However, the court declined to award statutory penalties, concluding that the County had acted in good faith when it denied the requests.

This appeal and cross-appeal followed. We granted the motions of Allied Daily Newspapers of Washington, Inc., Washington bureaus of the Associated Press, and Washington Association of Broadcasters (collectively, Media Associations) to file an amicus brief.

## STANDARD OF REVIEW

Courts review agency denials of disclosure de novo. RCW 42.17.340(3). Courts review the award and amount of penalties under the abuse of discretion standard. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 114 Wn.2d 677, 683-84, 790 P.2d 604 (1990) (*PAWS* I).

## DISCUSSION

1. Is a list of the full names of King County police officers exempt from disclosure under RCW 42.17.310(1)(d) on the ground that it is "specific intelligence information," nondisclosure of which is "essential to effective law enforcement?"

The public disclosure act was passed by initiative in 1972. *See* LAWS OF 1973, ch. 1; chapter 42.17 RCW. The public records portion of the act, RCW 42.17.250-.348, requires all state and local agencies to disclose any public record upon request, unless it falls within certain specific enumerated exemptions. RCW 42.17.260(1).

The central purpose of the act is "nothing less than the preservation of the most central tenets of representative government, namely, the sovereignty of the people and the accountability to the people of public officials and institutions." *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (*PAWS* II); RCW 42.17.251. Our courts have repeatedly held that the act is "a strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978); *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997); *PAWS* II, 125 Wn.2d at 251.

Accordingly, the act's disclosure provisions must be liberally construed, and its exemptions narrowly construed. RCW 42.17.251, .010(11); *PAWS* II, 125 Wn.2d at 251; *Amren*, 131 Wn.2d at 31.

 Courts must take into account the policy of the act "that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.17.340(3). The agency bears the burden of proving that refusal to disclose "is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." RCW 42.17.340(1). In addition, agencies "shall not distinguish among persons requesting records, and such persons shall not be required to provide information as to the purpose for the request" except under very limited circumstances not applicable to this case. RCW 42.17.270. "[I]f the requested material contains both exempt and nonexempt material, the exempt material may be redacted but the remaining material must be disclosed." *Amren*, 131 Wn.2d at 32; RCW 42.17.310(2).

The County first argues that the list of officer names is exempt because nondisclosure is essential to effective law enforcement. RCW 42.17.310(1)(d) exempts from disclosure:

> Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

The trial court based its decision to require disclosure of only the officers' last names on this exemption. Neither party is content with this ruling: the County contends that not even the surnames of police officers are disclosable under this exemption, while Sheehan, Rosenstein, and amici Media Associations argue that the exemption does not apply at all.

The County does not argue that the list of officers' names constitutes an "investigative record." Nor should it. Records are exempt under that category only "if they were 'compiled as a result of a specific investigation focusing with special intensity upon a particular party.'" *Dawson v. Daly*, 120 Wn.2d 782, 792-93, 845 P.2d 995 (1993) (quoting *Laborer's Int'l Union, Local No. 374 v. City of Aberdeen*, 31 Wn. App. 445, 448, 642 P.2d 418 (1982)). Instead, the County argues that the list of names constitutes "specific intelligence information," the nondisclosure of which is "essential to effective law enforcement."

 The act does not define the term "specific intelligence information." In the absence of a statutory definition, courts give words their ordinary meaning. *Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 905, 949 P.2d 1291 (1997). Courts may look to dictionary definitions to determine ordinary meaning. *Id.* In this context, "intelligence" may be defined as "the gathering or distribution of information, especially secret information," or "information about an enemy" or "the evaluated conclusions drawn from such information." RANDOM HOUSE UNABRIDGED DICTIONARY 990 (2d ed. 1993). With the possible exception of the names of police officers who are actively engaged in undercover operations at the time of a request for disclosure, it is difficult to see how a list of police officers' names could fall under these definitions. In addition, the exemption applies only to *specific* intelligence information, suggesting an even narrower interpretation. Other jurisdictions and courts have narrowly defined "intelligence information" in a manner that would clearly not include a general list of officers' names. *See, e.g.*, MULTNOMAH COUNTY CODE 15.551 ("[i]nformation compiled in an effort to anticipate, prevent or monitor possible criminal activity, or compiled in a course of investigation of known or suspected crimes"); MASS. GEN. LAWS ch. 6, § 167 (1977) ("records and data compiled by a criminal justice agency for the purpose of criminal investigation, including reports of informants, investigators or other persons"); *Am. Civ. Liberties Union*

*Found. of N. Cal., Inc. v. Deukmejian*, 32 Cal. 3d 440, 651 P.2d 822, 827, 186 Cal. Rptr. 235 (1982) ("intelligence information" exemption applies to information identifying confidential sources or subjects in organized crime records; rejecting position that exemption applies to all information "reasonably related to criminal activity" on grounds that such an interpretation would "effectively exclude the law enforcement function of state and local governments from any public scrutiny").

The County has not convincingly explained why officers' names that are routinely released on a daily basis in court, on the streets, in the media, or to individuals on a per-incident basis are not intelligence information, whereas a list of names released pursuant to a public records act request by a known critic of law enforcement is intelligence information. The County suggests that the list of names is intelligence information because it contains the names of undercover officers, and officers who might someday go undercover. But Sheehan and Rosenstein did not ask for a breakdown of which officers are presently operating undercover and which are not. Neither has the County offered to provide a list with the names of undercover officers redacted. Moreover, to construe the "specific intelligence information" exemption so broadly as to include the names of officers who might someday go undercover would fly in the face of the thrice-repeated legislative mandate that exemptions under the public records act are to be narrowly construed. *See* RCW 42.17.010(11), .251, .920.

In sum, the County's proposal to include law enforcement officers' names within the "intelligence information" exemption contradicts the commonsense definition of the term "intelligence information" and runs counter to the act's purpose of broad disclosure of public records. As our Supreme Court has said in another context, "[e]xemptions from remedial legislation . . . are narrowly construed and applied only to the situations which are plainly and unmistakably consistent with the terms and spirit of the legislation." *Drinkwitz v. Alliant Techsys.*, 140 Wn.2d 291, 301,

996 P.2d 582 (2000). Our state and local law enforcement officers do not operate as "secret police" whose names are exempt from public disclosure.

▄▄▄▄▄▄ The County next argues that the list of officers' names is exempt because it is "essential to effective law enforcement." The County relies on *Newman v. King County*, 133 Wn.2d 565, 947 P.2d 712 (1997), in arguing that documents are exempt for purposes of law enforcement if they meet a two-part test.[3] First, the information must be compiled by law enforcement and, second, its nondisclosure must be essential to effective law enforcement. *Id.* at 572-73. There is no question that the list of officers' names was "compiled by law enforcement." The County advances two theories in support of its argument that nondisclosure of the officers' names is essential to law enforcement. First, the County asserts that maintaining officer confidentiality is critical to the success of undercover operations. According to the County, all of the precautions it takes to protect the identity of its undercover officers would be useless if a full list of officers' names could be obtained through the act. The County acknowledges that Sheehan and Rosenstein did not ask the County to identify which officers are undercover and which are not. However, it asserts that suspected violators of criminal law could use the list of names to obtain officers' home addresses from other sources. The suspected violators could then take pictures of the officers leaving their homes, and use the photographs to spot undercover officers that they might encounter while engaging in criminal behavior. Second, the County argues that nondisclosure is also essential to officers who do not work undercover because, if they know that their residential addresses can easily be obtained by any individual who has a list of the names of all police officers employed by the County, they will constantly fear for their own safety and

---

[3] It is important to note that in *Newman* the parties did not dispute that the requested documents were "specific investigative records." And neither party argued that they were "intelligence information." Therefore, the test formulated by the *Newman* court did not mention those critical portions of the statutory language.

the safety of their families. Over time, the County contends that this will induce a state of "hyper-vigilance" that will deplete the officers' "perceptual resources," placing the officers in a double bind, because they must constantly face the possibility that angry suspects will threaten their families.

There can be no doubt that the threats faced each day by police officers are real, and that police officers and their families experience stress as a result of the dangers inherent in the occupation. We sympathize with these concerns; indeed, we empathize with them, for judges are not immune from threats by angry litigants. We also are not insulated from news reports about physicians who perform abortions being identified by name and residential address on anti-abortion websites and subsequently being murdered, and are not so naïve as to believe that police officers who are identified on anti-police websites, such as those run by Sheehan and Rosenstein, by name and home address, and perhaps by residential telephone number and social security number as well, could not thereby be placed in danger or subjected to harassment or identity theft. Still, the County admits that it regularly releases the names of its officers, including undercover officers, to the legitimate news media and, indeed, to anyone else who requests them in connection with specific incidents. Officers who are not operating undercover disclose their own names each day, on the name tags that they wear on their uniforms, on the tickets and citations that they issue, to suspects whom they interrogate, to witnesses whom they interview, and on the public record when they testify in open court—even undercover police officers use their real names when testifying in open court. The County has failed to explain why disclosure of a general list of names pursuant to the public records act request will somehow result in more danger and stress than all of these other individual daily disclosures. The County's policy of releasing officer names on a per-incident basis, quite possibly to angry suspects with an ax to grind, would seem to be as dangerous to police, if not more so, as

releasing a general list of all officers unconnected to any specific incident.

The County has long had a policy of routinely releasing the names, ranks, and pay scales of its police officers to legitimate news media upon request. We can conclude only that the requests of Sheehan and Rosenstein were denied because of who these men are—both operate controversial websites that are critical of police, and Sheehan, at least, has heretofore published home addresses of police officers on his website. Indeed, the trial court's order reflects that the decision to require the County to release only the surnames of its police officers was based in part on "William Sheehan's statements regarding his intended use of the information," as well as "balanc[ing] the interests of disclosure with the interests in effective law enforcement." But the act expressly states that "[a]gencies shall not distinguish among persons requesting records, and such persons shall not be required to provide information as to the purpose for the request." RCW 42.17.270.[4] Therefore, Sheehan's intended use of the information cannot be a basis for denying disclosure. To conclude otherwise would be to allow agencies to deny access to public records to its most vocal critics, while supplying the same information to its friends.

The trial court's balancing test is flawed, as well. RCW 42.17.310(1)(d) does not authorize a balancing of the public's right to disclosure with its interest in effective law enforcement, nor does any other portion of the act. To state it another way, the act prohibits requiring persons to provide information as to the purpose for the request and, by that same token, it prohibits balancing that intended use against the interests in effective law enforcement.

---

[4] The court's order also runs counter to the Washington State Attorney General's official publication interpreting the act: "A decision to permit inspection [of public records] cannot be based on the identity of the requester or the stated purpose, if any, of the request. If a record is available to one, it is available to all. The decision must be based on the content of the record itself, not on the 'need to know' of a particular requester." WASHINGTON ATTORNEY GENERAL'S OFFICE, OVERVIEW OF PUBLIC RECORDS 10 (1995).

For all of these reasons, we reverse the trial court's ruling that the County need release only the surnames of its police officers, and we hold instead that the full names of police officers employed by the County are not exempt from disclosure under the public records act based on the exemption contained in RCW 42.17.310(1)(d).

2. Is a list of the full names of King County police officers exempt from disclosure under RCW 42-.17.310(1)(b) on the ground that disclosure would violate the employees' right to privacy?

 Although the trial court based its ruling on RCW 42.17.310(1)(d), the specific intelligence information/effective law enforcement exemption, the County also argues that the list of officers' names is exempt because disclosure would violate the officers' right to privacy. RCW 42.17.310(1)(b) exempts from disclosure: "Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." The right to privacy is invaded or violated "only if disclosure of information about the person: (1) [w]ould be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.17.255; *PAWS II*, 125 Wn.2d at 254. In interpreting RCW 42.17.255, the Washington Supreme Court has stated that "the right of privacy applies 'only to the intimate details of one's personal and private life,'" in contrast to actions taking place in public. *Dawson*, 120 Wn.2d at 796 (quoting *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 38, 769 P.2d 283 (1989)). The exemption applies to personal information that employees would not normally share with strangers. *Dawson*, 120 Wn.2d at 796.

RCW 42.17.255 is based on *Restatement (Second) of Torts* § 652D (1977), which addresses invasion of privacy. *Hearst*, 90 Wn.2d at 135-36. Thus, section 652D provides useful guidance in interpreting the scope of the right:

There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already

> public. Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as the date of his birth, the fact of his marriage, his military record, the fact that he is admitted to the practice of medicine or is licensed to drive a taxicab . . . .
>
> Similarly, there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye. Thus he normally cannot complain when his photograph is taken while he is walking down the public street and is published in the defendant's newspaper. Nor is his privacy invaded when the defendant gives publicity to a business or activity in which the plaintiff is engaged in dealing with the public.

RESTATEMENT, *supra*, at cmt. b.

> There are other individuals who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest. . . . The same is true as to those who are . . . involved in judicial proceedings or other events that attract public attention. These persons are regarded as properly subject to the public interest . . . .

*Id.* at cmt. f.

No Washington case has held that public employees' names are private and subject to the personal privacy exemption. Washington's public records act contains no blanket exemption for names, as it does for addresses. RCW 42.17.310(1)(u) exempts from disclosure "[t]he residential addresses or residential telephone numbers of employees . . . of a public agency." Generally, however, absent such a statute so providing, lists of names and addresses are not private. *See* Phillip E. Hassman, Annotation, *Publication of Address as Well as Name of Person as Invasion of Privacy*, 84 A.L.R.3d 1159 (1978); Andrea G. Nadel, Annotation, *What Constitutes Personal Matters Exempt From Disclosure by Invasion of Privacy Exemption Under State Freedom of Information Act*, 26 A.L.R.4th 666 (1983).

Certain federal cases have held that the privacy exemption of the Freedom of Information Act (FOIA), 5 U.S.C.

§ 552(b)(6) prevents disclosure of names and addresses when coupled with employee job classification, and salary and benefits information. *Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994); *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Housing & Urban Dev.*, 936 F.2d 1300, 1303 (D.C. Cir. 1991). And, in the law enforcement context, at least one federal court has held that the right to privacy for officers involved in a specific investigation outweighed the public interest in disclosure of their names. *Nix v. United States*, 572 F.2d 998, 1003, 1006 (4th Cir. 1978) (holding that names of FBI agents who investigated alleged beating of prisoner by prison guards and name of assistant United States attorney who made the decision that the alleged civil rights violation lacked criminal prosecutive merit need not be disclosed to prisoner under FOIA; pointing out that FOIA is not designed to supplement the rules of civil discovery but rather to inform the public about the action of governmental agencies). In interpreting Washington's public disclosure act, our courts may look to the federal courts and their interpretation of FOIA. *Bonamy v. City of Seattle*, 92 Wn. App. 403, 410, 960 P.2d 447 (1998). However, it is important to bear in mind that the " 'state act is more severe than the federal act in many areas.' " *PAWS II*, 125 Wn.2d at 266 (quoting *Hearst*, 90 Wn.2d at 129). Most significantly, unlike federal cases interpreting FOIA, "the use of a test that balances the individual's privacy interest against the interest of the public in disclosure is not permitted." *Dawson*, 120 Wn.2d at 795; *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 798, 791 P.2d 526 (1990). Under Washington's act, *both* a privacy interest *and* a lack of legitimate public interest must be present to establish this exemption. *Dawson*, 120 Wn.2d at 798.

The County does not argue that it is "highly offensive" merely to reveal that a person works in law enforcement. Rather, the County argues that releasing the list of officers' names could allow someone to track down their home addresses and other personal, nondisclosable information

from other sources which, if published, would be highly offensive. The County concedes that releasing a list of names of its officers might not amount to an invasion of privacy for most people, or even most public employees, but contends that law enforcement officers are different because public identification could lead to harassment and danger in their personal lives.

The County relies largely on *Tacoma Public Library v. Woessner*, 90 Wn. App. 205, 951 P.2d 357, 972 P.2d 932 (1998), in support of its argument. In that case, Woessner asked the Tacoma Public Library to disclose records featuring employees' rates of pay, benefits, and pension contributions. This information was organized in city records by employee name and identification number. *Id.* at 210. The library provided the records with employee names and identification numbers redacted, based on the privacy exemption contained in RCW 42.17.255. *Id.* The library argued that disclosure of an employee's name coupled with his or her identification number would permit access to other exempt personal information, such as the employee's social security number, home address, and telephone number, by anyone logging onto a city of Tacoma computer. Division Two of this court held that release of employee names is not highly offensive, if not coupled with employee identification numbers:

> [R]elease of employees' identification numbers would be highly offensive, because disclosure could lead to public scrutiny of individuals concerning information unrelated to any governmental operation and impermissible invasions of privacy . . . . But release of employee names would not be similarly offensive or lead to such invasions of privacy; rather, disclosure of employee names would "allow public scrutiny of *government*."

*Id.* at 221-22 (quoting *Cowles Publ'g Co. v. State Patrol*, 44 Wn. App. 882, 898, 724 P.2d 379 (1986)).

*Woessner* could conceivably be read to support the County's "linkage" argument—that is, that any information, no matter how public it may be, is nondisclosable if it could

somehow lead to other, private information being tracked down from other sources. But this reading would be far too broad in light of the *Woessner* court's holding that release of public employees' names, without more, is not highly offensive.

It is a fact of modern life in this age of technology that names can be used to obtain other personal information from various sources, but we conclude that this is not sufficient to prevent disclosure of the names of police officers under the act. Names, unlike employee numbers, are released on a regular basis as a necessary incident of everyday life. Police officers release their names when they put on their uniforms, pin on their badges and name tags, and appear in public each day. The County routinely releases police officers' names on a per-incident basis. We hold that under Washington's public records act, the names of police officers, without simultaneous release of other identifying information such as home addresses, residential telephone numbers, and social security numbers cannot be considered "highly offensive" under RCW 42.17.255.

The County also argues that a general list of the names of law enforcement officers is not a matter of legitimate public interest, because such a list is unrelated to a specific incident. The County relies largely on *In re Rosier*, 105 Wn.2d 606, 611, 717 P.2d 1353 (1986), for the proposition that the basic purpose and policy of chapter 42.17 RCW is "to allow public scrutiny of government, rather than to promote scrutiny of particular individuals who are unrelated to any governmental operation." The County also relies on another statement from *Rosier*: "[A]n individual has a privacy interest whenever information which reveals unique facts about those named is linked to an identifiable individual." *Id.* at 613. According to the County, a citizen requesting an officer's name connected with a specific incident does have a legitimate public interest in knowing the name because it is related to a governmental operation, whereas this can never be true with a general list of names.

But police officers are public employees, paid with public tax dollars. They are granted a great deal of power, authority, and discretion in the performance of their duties. Amici Media Associations provide examples of investigative reporting based in significant part on information obtained from public records containing the names of police officers, including news stories about the high cost of overtime pay to deputy sheriffs and jail custodians employed by Snohomish County, Washington, the high cost of settlement of claims of excessive use of force by police in Boise, Idaho, and a massive investigation by *The Washington Post* comparing the incidence of police shootings in Washington, D.C., with that in other large cities—including information obtained from public records reflecting that a disproportionately high number of shootings were by new recruits following a crash hiring program mandated by Congress in which 1,500 new officers were graduated from the police academy and placed on the streets, admittedly without adequate screening, training, and post-academy supervision. The legitimate media utilize lists containing names of police officers to track over time how well individual officers are performing their jobs, whether they participate in continuing police training and education programs, and to safeguard against corruption and abusive use of authority. These actions are undoubtedly related to governmental operations and a legitimate matter of public concern. Yet, in apparent recognition of the fact that the County could not properly distinguish between the legitimate media and Sheehan and Rosenstein, after the County denied the requests of Sheehan and Rosenstein for the lists here at issue, it also denied a similar request from *The Seattle Times*.

The expansive views on the scope of privacy expressed in *Rosier* and relied on by the County were legislatively overruled by the legislature the following year, when it placed an express and narrow definition of privacy into the act. In so doing, the legislature intended to restore "the law relating to the release of public records largely to that

which existed prior to the Washington Supreme Court decision in *In re Rosier*." LAWS OF 1987, ch. 403, § 1, at 1546; RCW 42.17.255. *See PAWS* II, 125 Wn.2d at 258-59 (recognizing that the legislature, by post-*Rosier* amendments to the act, specifically overturned the *Rosier* court's interpretation of general language in the procedural section of the act concerning personal privacy to create a general personal privacy exemption).

We understand the County's desire to protect its police officers from harm that could follow from publication by Sheehan and Rosenstein on their websites of information that would violate the officers' rights of privacy, such as their home addresses, home telephone numbers, social security numbers and similar private information. We observe that the legislature has, from time to time, adopted new exemptions to the public records act. *See PAWS* II, 125 Wn.2d at 258 n.6 (noting that number of exemptions had increased from 10 in the initiative passed in 1973, to 40-odd by 1995). Certainly, the legislature could amend the act to add exemptions crafted to address abuses that the County believes will follow if it is required to disclose the names of its police officers. But in keeping with the mandate of the act for full disclosure in the absence of a specific exemption, the legislature sometimes addresses abuses by enacting antiharassment statutes aimed specifically at harassers, rather than by enacting exemptions that would erode the broad mandate of the act for broad public disclosure of public records.[5]

While this appeal was pending, the legislature passed and the governor signed into law a new statute now found

---

[5] One such anti-harassment statute is RCW 4.24.580, which permits individuals who own or are employed at research, educational or agricultural production facilities that use animals for research to apply for injunctive relief to prevent harassment by persons or organizations whose intent is to stop or modify the use of animals in research by means that would cause injury to the person or property of the recipient. *See PAWS* II, 125 Wn.2d at 263-64 (holding that researchers may seek to enjoin the release of certain portions of public records sought under the public records act, including the names of researchers, if the nondisclosure of those portions is necessary to prevent harm or injury to persons or property and the criteria of the antiharassment statute is properly invoked and its criteria met).

at RCW 4.24.680-.700. RCW 4.24.680 makes it unlawful, with the intent to harm or intimidate, to sell, trade, give, publish, distribute or otherwise release the residential address, residential telephone number, birthdate or social security number of any law enforcement-related, corrections officer-related, or court-related employee or volunteer and categorize them as such, without the express written permission of the employee or volunteer, unless specifically exempted by law or court order. RCW 4.24.690 permits the prosecuting attorney or any person harmed by an alleged violation of the preceding section to seek injunctive relief to abate and prevent the continuance or recurrence of the violation. And RCW 4.24.700 permits law enforcement-related, corrections officer-related or court-related employees or volunteers who suffer damages as a result of a person or organization violating the provisions of section 4.24.680 to bring a lawsuit for actual damages sustained plus attorney fees and costs. The Senate Bill Reports for SB 6700 in its various iterations, by which these new sections originated, reflect that the new statute was enacted because an (unnamed) individual who is critical of law enforcement personnel had published the names, residential addresses, residential telephone numbers, birth dates, social security numbers and other personal information about police officers and their relatives over the Internet. We observe that if our legislature had intended the names of police officers to be exempt from disclosure under the public records act, it is unlikely that it would have enacted these new statutes.

In sum, the trial court erred by requiring the County to disclose only the surnames of its police officers. We reverse and remand for entry of an order requiring the County to release the full names and ranks of the officers as contained in the public records here at issue.

3. Did the trial court err in awarding Sheehan and Rosenstein the full amount of their attorney fees requested?

██ Our ruling that the trial court should have required the County to disclose the full names and ranks of its police

officers effectively moots the County's challenge to the trial court's award of attorney fees and costs to Sheehan and Rosenstein on the basis that they prevailed only partially at the trial court level. Accordingly, we will not address that issue. But we will address the County's contention that Sheehan and Rosenstein should not receive the full amount of the fees they requested because they worked together in defending the lawsuit and their legal research and briefing was redundant and duplicative. This argument is not convincing. The County fails to point to any specific facts in the record to support its allegation. Furthermore, since Rosenstein's motion to intervene was granted, he and Sheehan have submitted joint briefs. This is not an adequate reason to disturb the trial court's grant of attorney fees.

4. Did the trial court err in declining to award statutory penalties under RCW 42.17.340(4) on the ground that the County did not withhold the record in bad faith?

Sheehan, Rosenstein, and amici Media Associations argue that where the party seeking disclosure prevails, even partially, penalties are mandatory under RCW 42.17.340(4), and that the trial court has discretion only in setting the amount of the penalty between $5 and $100 for each day that public records are wrongfully withheld. Sheehan and Rosenstein (but not Media Associations) further contend that the County withheld the records in bad faith, and ask that this court impose the maximum statutory penalty of $100 per day.

RCW 42.17.340(4) provides that "it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record." We first note that this statute grants discretion to the trial court, not to this appellate court, to set the amount of the penalty within the minimum and maximum ranges. Our function is to review claims of abuse of trial court discretion with respect to the imposition

or lack of imposition of a penalty, not to exercise such discretion ourselves. Accordingly, we summarily reject Sheehan and Rosenstein's invitation to impose the maximum statutory penalty.

 This provision serves as a "penalty to enforce the strong public policies underlying the public disclosure act." *Amren*, 131 Wn.2d at 35-36; *PAWS* II, 125 Wn.2d at 271. Courts have repeatedly emphasized that " 'strict enforcement' " of this provision " 'will discourage improper denial of access to public records.' " *PAWS* II, 125 Wn.2d at 272 (quoting *PAWS* I, 114 Wn.2d at 686). "The award provision does not require a showing of bad faith for the imposition of a penalty. Likewise, a good faith reliance on an exemption will not exonerate an agency from the imposition of a penalty where the agency has erroneously withheld a public record." *Amren*, 131 Wn.2d at 36. Furthermore, there is no requirement that the agency act unreasonably for an award to be imposed. *Id.* at 37.

 In arguing that a penalty award is mandatory where the agency erroneously withholds documents, Sheehan, Rosenstein and amici rely primarily on the Washington Supreme Court's holding in *Amren* that "when an agency erroneously denies a public record and a party has prevailed against the agency in obtaining a copy of the public record an award is warranted." *Id.* The court reconfirmed this standard in *Limstrom v. Ladenburg*, 136 Wn.2d 595, 617, 963 P.2d 869 (1998) ("We have interpreted this provision to *entitle* a requester to an award if an agency erroneously denies disclosure of a public record.") (emphasis added) (citing *Amren*, 131 Wn.2d at 37). Although the Supreme Court did not state explicitly in *Amren* or *Limstrom* that the trial court *lacks* discretion to deny penalties altogether where an agency erroneously denies disclosure of a public record, this court has said that the act "*mandates* that the court award a penalty no less than $5 and no more than $100 per day for each day the requester was denied the right to inspect or copy the public record." *Am. Civ. Liberties Union v. Blaine Sch. Dist. No. 503*, 95

Wn. App. 106, 111, 975 P.2d 536 (1999) (emphasis added). We find it difficult to construe the statute any other way, for if the trial court has discretion to set penalties within the range of *not less than* $5 to not more than $100 per day, it would not seem to have discretion to set the penalties at less than $5 per day, which in turn would necessarily mean that it does not have discretion to deny penalties altogether, where access to the records requested was erroneously denied.[6]

The County relies on *Lindberg v. Kitsap County*, 133 Wn.2d 729, 948 P.2d 805 (1997), for the proposition that the trial court has the discretion not to award a penalty, even where the requesting party prevails, so long as the agency denial of access was exercised in good faith reliance on a statutory exemption. In *Lindberg*, the Washington Supreme Court upheld the trial court's order granting $1,100 to the Lindbergs for " 'a combination of attorney fees and . . . award of some penalties' " pursuant to RCW 42.17.340(4). *Id.* at 746-47. The trial court in that case apportioned $602.30 for attorney fees and costs and $507.70 as an additional penalty, but did specify the basis for calculating the penalty. *Id.* at 746. The Washington Supreme Court rejected the Lindbergs' argument that the trial court erred in failing to award penalties for 219 days within the statutorily mandated range of $5 to $100 per day, holding that there was no evidence that the trial court abused its discretion in setting the amount of the award. *Id.* at 747. The dissenting justices would have affirmed the

---

[6] *But see Yacobellis v. City of Bellingham*, 64 Wn. App. 295, 301, 825 P.2d 324 (1992), in which this court, construing a former version of the penalty statute, former RCW 42.27.340(3) (1987), stated that the provision "clearly places the decision of whether to grant a statutory award, as well as the determination of the amount of the award, 'within the discretion of the [trial] court.' " *Id.* at 299. The *Yacobellis* court further stated that "when the governmental agency itself has denied disclosure based on its own erroneous interpretation of the public disclosure act or its exemptions, the trial court is within its discretion in imposing an award under this provision." *Id.* at 302. The *Yacobellis* court's reasoning was abrogated in part by the Supreme Court in *Amren*, 131 Wn.2d at 37 n.10, wherein the court disavowed the notion that an agency must act unreasonably in order for a penalty to be imposed, and said, "Moreover, to require unreasonable conduct as the standard for award of penalties would be inconsistent with the strong policy of the Act to discourage improper denial of access to public records."

Court of Appeals decision remanding the matter back to the trial court for an affirmative finding as to the number of days the Lindbergs were denied the right to copy the engineering plans they sought, and to apply a multiple within the statutory penalty range of not less than $5 and not more than $100 for each day that the requested records were improperly withheld. *Id.* at 748-49. But even the dissenting justices apparently would have found discretion on the part of the trial court to deny an award of penalties altogether:

> Although the decision to make an award is discretionary, having exercised its discretion, the trial court must award penalties of "not less than five dollars and not to exceed one hundred dollars" for each day that the requested record was withheld. These penalties are strictly enforced to discourage improper denial of access to public records. The Court of Appeals correctly held that, upon the trial court's decision to award penalties, the Lindbergs were entitled to an award within the statutory range for each day they were denied the right to copy the engineering plans. The trial court erred by computing the award in a vacuum.

*Id.* at 748-49 (Durham, C.J., concurring in part, dissenting in part) (footnotes omitted).

We find it difficult to reconcile the Supreme Court's decisions in *Amren* and *Lindberg*. In *Amren*, the court said that the penalty provision "does not require a showing of bad faith for the imposition of a penalty. Likewise, a good faith reliance on an exemption will not exonerate an agency from the imposition of a penalty where the agency has erroneously withheld a public record." *Amren*, 131 Wn.2d at 36. Instead, good or bad faith is a factor for the court to consider in setting the amount of the penalty, within the permissible statutory range. *Id.* at 37-38. Yet, in *Lindberg*, where the trial court found that the agency reasonably relied in good faith on its legal counsel's erroneous advice that it could not permit copying of copyrighted engineering plans under the federal copyright act, the majority affirmed a penalty award that seems to have been less than $5 per

day based on the trial court's finding of good faith, and the dissenting justices seemingly would have approved the denial of any penalty award whatsoever, although they did not approve an award of less than $5 per day, once the trial court found that some penalty was warranted.[7] With all due respect, our Supreme Court needs to clarify the ambiguity in the law that is created by these two cases: Either an agency's good faith but erroneous reliance on a statutory exemption permits the trial court to deny any penalty whatsoever (or to impose a penalty of less than $5 per day as seemingly was the result if not the explicit holding in *Lindberg*) or it does not, as seemingly was the holding in *Amren*.

We nevertheless must decide the issue now, without the benefit of Supreme Court clarification. We believe that the seeming conflict between these two cases may arise from the failure of the parties in *Lindberg* to point out to the court that the legislature amended RCW 42.17.340 in 1992. *See* LAWS OF 1992, ch. 139, § 8. Before the amendment, RCW 42.17.340(3) provided that in addition to mandatory costs and attorney fees, *"it shall be within the discretion of the court to award such person an amount not to exceed twenty-five dollars for each day that he was denied the right to inspect or copy said public record."* Former RCW 42-.17.340(3) (1987) (emphasis added). It is understandable why courts construing that language would conclude that the trial court had discretion to deny any penalty award

---

[7] The number of days that the records were erroneously withheld in *Lindberg* was disputed, but it is nevertheless clear that the trial court's award of $507.70 was either drawn from thin air or based on something less than $5 per day, in that the Lindbergs were not permitted to copy the engineering plans for something close to 219 days. *See Lindberg*, 133 Wn.2d at 737-38. The dispute about the number of days was based on the fact that both Evelyn Lindberg and her father Richard Lindberg made requests for the engineering plans, some days apart, so that the number of days the records were withheld would depend in part upon whether the requests were treated together or as overlapping. In addition, the agency had permitted the Lindbergs to view the engineering plans, though not to photocopy them, perhaps raising an issue of fact as to the degree to which they were denied access to the record. *See Lindberg v. Kitsap County*, 82 Wn. App. 566, 919 P.2d 89 (1996), *aff'd in part, rev'd in part on other grounds*, 133 Wn.2d 729 (1997). Nevertheless, RCW 42.17.340(4) prescribes a penalty for each day that the person is "denied the right to inspect *or copy* said public record." (Emphasis added.)

whatsoever, even when the agency erred in concluding that it need not release the record. *See, e.g., Yacobellis v. City of Bellingham*, 64 Wn. App. 295, 299, 825 P.2d 324 (1992) ("RCW 42.17.340(3) clearly places the decision of whether to grant a statutory award, as well as the determination of the amount of the award 'within the discretion of the trial court.' "). By way of the 1992 amendment, the legislature inserted a new subsection (2), redesignated former subsections (2) and (3) as (3) and (4), added a new sentence to subsection (3), and rewrote the resulting subsection (4) so that it now reads as follows:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. *In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.*

(Emphasis added.) We conclude that by so amending the statute, the legislature limited trial court discretion, so that a penalty of *at least* $5 per day is now mandatory where an agency erroneously withholds a public record, whether or not the agency acted in good faith reliance upon a statutory exemption that is not in fact applicable. In so ruling, we rely upon the fact and content of the 1992 amendment to the statute, and upon the Supreme Court's soundly-reasoned opinion in *Amren*.

Here, the trial court declined to award penalties, despite the fact that Sheehan and Rosenstein prevailed on the major issue of disclosing last names, based on its finding that that the County acted in good faith. However, "a good faith reliance on an exemption will not exonerate an agency from the imposition of a penalty where the agency has erroneously withheld a public record." *Amren*, 131 Wn.2d at 36. As this court explained in *American Civil Liberties Union v. Blaine School District No. 503*, 95 Wn. App. 106 (A.C.L.U.) (construing the amended version of the statute):

> Agencies are sometimes placed in a difficult position concerning the disclosure of documents that may violate a third party's right to privacy, rights under another law, or rights under the attorney-client privilege or work product doctrine. Yet, even when agencies are faced with the conflicting interests of complying with the act and protecting third party rights, the act *requires* that courts impose penalties for the wrongful withholding of documents.

95 Wn. App. at 111. (Emphasis added.) Therefore, even assuming that the County did act in good faith, the trial court abused its discretion in denying an award of penalties.

The only question is the proper amount. "Although a showing of bad faith or economic loss is not required in the determination of whether an award for delay in disclosure should be granted, they are factors for the trial court to consider in determining the amount to be awarded." *Amren*, 131 Wn.2d at 37. The existence or absence of bad faith is the principal factor in determining the amount of penalty to be imposed. *Yacobellis*, 64 Wn. App. at 303. In *A.C.L.U.*, this court held that a penalty of $10 per day was appropriate where it was clear that the agency did not act in good faith in withholding the records. 95 Wn. App. at 115. In making this determination, we observed that the agency's refusal to disclose the requested records was not motivated by a desire to protect a third party's rights, but rather to avoid the cost and inconvenience of complying. *Id.* at 114.

There is no similar evidence of bad faith here. While the County may dislike Sheehan and his incendiary website, the County's refusal to disclose the full names of its police officers appears primarily to have been motivated by a desire to protect their safety and privacy—and it is undisputed that Sheehan had, in fact, previously published police officers' home addresses on his website. The County made its decision before the legislature enacted RCW 4.24.680-.700, so that the County did not have an alternate means of attempting to preserve its officers' privacy. Although we do not find the County's arguments against disclosure to be

persuasive, they are not so farfetched as to constitute bad faith. Therefore, we hold that the trial court did not abuse its discretion in finding that the County acted in good faith. But remand is necessary because good faith does not justify failing to impose at least the minimum statutory penalty of $5 per day.

## CONCLUSION

Sheehan and Rosenstein's websites are controversial, incendiary, and offensive to many. Nevertheless, the public records act requires agencies to ignore the identity of the requester, and to focus on the information itself in determining whether it is exempt from disclosure. Neither of the statutory exemptions relied upon by the County apply to the requests for disclosure in this case. The trial court erred in ordering that the County could withhold the first and middle names (or initials where the officers are so identified in the public record) of its law enforcement personnel. And the trial court erred in failing to impose at least the minimum statutory penalty of $5 per day, notwithstanding that its finding of good faith by the County is supported by the record. The trial court did not err in awarding Sheehan and Rosenstein the full amount of their attorney fees and costs.

RCW 42.17.340(4) also entitles Sheehan and Rosenstein to their reasonable attorney fees on appeal. *PAWS* I, 114 Wn.2d at 690-91; *PAWS* II, 125 Wn.2d at 271; RAP 18.1. We so order.

Affirmed in part, reversed in part, and remanded for the imposition of a penalty as provided in RCW 42.17.340(4) and this opinion.

Cox, A.C.J., and BAKER, J., concur.