IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RANDALL HOFFMAN, | ) | No. 35091-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| KITTITAS COUNTY, a local agency and | ) | |
| the KITTITAS COUNTY SHERIFF'S | ) | |
| OFFICE, a local agency, | ) | |
| | ) | |
| Respondents. | ) | |

PENNELL, J. — Trial courts have broad discretion to select appropriate penalties for violations of Washington's Public Records Act (PRA), chapter 42.56 RCW. In limited cases, we will overturn a trial court's exercise of authority on appeal. But this is not one of them. After finding Kittitas County and the Kittitas County Sheriff's Office (collectively the County) violated the PRA, the trial court considered the relevant PRA penalty factors and, based on substantiated facts, selected a reasonable penalty assessment. Nothing more was required for a fair exercise of PRA penalty discretion. We therefore affirm.

BACKGROUND

*Facts*[1]

Randall Hoffman submitted a public records request to the Kittitas County

Sheriff's Office on June 29, 2015. The request sought police reports referencing an

individual named Erin Schnebly. The request was received by Carolyn Hayes, the

designated public records clerk for the sheriff's office. Hayes had 10 years of experience

and training responding to PRA requests directed to the sheriff.

Hayes conducted an initial search for records and identified seven incident reports.

Her initial search did not locate photos or videos. A careful review would have revealed

the existence of numerous photos and two videos responsive to the request.

Hayes called Hoffman about his request. Hayes's primary concern was that her

review did not show Hoffman had any involvement in the seven incidents. Hayes told

Hoffman that because he was not involved in the incidents, she could not provide him the

majority of the documents he requested. As the parties now agree, this information was

incorrect. Based on Hayes's misinformation, Hoffman limited his request to face sheets

of reports, which identified the type of incident, date, and location.

Kallee Knudson, a records clerk who began training under Hayes in the sheriff's

office earlier that June, overheard Hayes's phone call to Hoffman. She could hear what

---

[1] The facts are based on the trial court's uncontested findings.

Hayes said but not what Hoffman said. Specifically, Knudson heard Hayes tell Hoffman she "would not be able to provide the majority of documents" per specific statutes. Clerk's Papers (CP) at 15-16, 459. Knudson had never noticed Hayes saying anything similar to this before, and it did not make sense to her.

Knudson questioned Hayes about Hoffman's request. Hayes discussed a statute that she believed supported her position. She also added that Hoffman had agreed to limit his request to the face sheets.

Hayes made the following notation on Hoffman's PRA request: "2009-2015 face sheet only." CP at 13. Hayes, relying on a statute that the parties now agree did not apply to the request, made significant and improper redactions to the face sheets. The next day, Hayes provided the redacted face sheets to Hoffman.

In early September 2015, Knudson was cleaning Hayes's desk prior to Hayes's pending retirement. Knudson saw a stack of PRA requests in Hayes's desk, including Hoffman's. Because she was still troubled by how Hayes handled Hoffman's request, Knudson discussed the request with her two supervisors. Both supervisors instructed Knudson to call Hoffman, to tell him that she was reviewing past requests, and to determine whether Hoffman was satisfied with the response of the sheriff's office.

Knudson called Hoffman. After Hoffman told her he had received records responsive to his request, Knudson thanked him and ended the call. Knudson did not express her concerns to Hoffman about the handling of his request.

Several days later, Hayes spoke with the same two supervisors about Hoffman's PRA request. Like what was told to Knudson, the supervisors instructed Hayes to call Hoffman to see if he was satisfied with what he received. Hayes called Hoffman to confirm he had received what he needed. Hoffman indicated that he had, but explained he had been looking for an incident where Schnebly allegedly ran someone over. Hayes remained on the phone with Hoffman while she looked for the report, but was unable to locate it.

On February 25, 2016, Hoffman returned to the sheriff's office. He told Knudson he should have received more documents in response to his June 2015 request, that he could sue, and that he might want to make another records request. Hoffman claimed Hayes and the person whom he sought information about, Schnebly, were drinking buddies, and this relationship was the reason he did not receive all appropriate records. Hoffman left with a blank PRA request form and said he needed to talk to some folks.

Although Hayes knew who Schnebly was, the two did not socialize. The fact that Hayes knew of Schnebly was not a factor in Hayes's handling of Hoffman's PRA request.

On February 29, 2016, Hoffman submitted a new request, which is not at issue in this appeal. The same day, he also resubmitted his old request. Knudson properly processed both requests and provided all documents to Hoffman on March 1, 2016. The documents relating to the resubmitted request total 126 records, and consist of 29 pages

of reports, 2 videos, and 95 photos.

*Procedure*

Two days after receipt of the response to his final PRA request, Hoffman filed this PRA action against the County. He asserted that Hayes and the County acted in bad faith when Hayes withheld the records he requested.

Hoffman filed a motion for summary judgment, but it was never heard. Instead, the parties conducted limited discovery and then agreed to waive their right to a jury trial and submit the matter to a bench trial based on stipulated facts, concessions of the parties, exhibits, and testimony through depositions, affidavits or declarations.

After reviewing the written submissions of the parties and hearing argument of counsel, the trial court ruled in Hoffman's favor, finding the sheriff's office improperly redacted and withheld 126 records for 246 days. The court concluded, however, that Hayes's error was a result of negligence, not bad faith. The court found that Knudson had not acted negligently, that the sheriff's office had provided appropriate supervision, and that the response to Hoffman's PRA request was timely, though inadequate.

The trial court weighed the penalty factors set by the Supreme Court in *Yousoufian v. Office of Ron Sims, King County Exec.*, 168 Wn.2d 444, 229 P.3d 735 (2010) (*Yousoufian* II), and ordered the County to pay Hoffman his reasonable attorney fees and a penalty of $0.50 per day for each document that the sheriff's office had failed to produce or improperly redacted. Because the penalty days totaled 246, and the number of

records totaled 126, the penalty totaled $15,498. Hoffman appeals the penalty award.

ANALYSIS

This case is governed by the applicable standard of review. Unlike a substantive PRA violation decision, a PRA penalty determination is reviewed for abuse of discretion. *Compare* RCW 42.56.550(3) ("Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo.") *with* RCW 42.56.550(4) ("[I]t shall be within the discretion of the court to award" PRA penalties.); *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 431, 98 P.3d 463 (2004) (*Yousoufian* I) ("[T]he trial court's determination of appropriate daily penalties is properly reviewed for an abuse of discretion.").

The abuse of discretion standard is extremely deferential. *Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus.*, 185 Wn.2d 270, 279, 372 P.3d 97 (2016) ("The plain language and legislative history of the PRA support trial courts having broad discretion to set appropriate penalties."). We will reverse a trial court decision under this standard only if the decision applies the wrong legal standard, relies on unsupported facts, or adopts a view that no reasonable person would take. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

The applicability of the abuse of discretion standard of review does not change because a trial judge, such as the judge here, decides to issue written findings of fact in support of a PRA penalty assessment. For one thing, there is no requirement that a trial

6

judge make findings in this context. *See Yousoufian* II, 168 Wn.2d at 468-69 (Supreme

Court imposed penalty of $45 per day without issuing any findings or conclusions).[2] It

would therefore be curious for us to engage in a heightened critique of a trial court's

discretionary penalty decision simply because the court chose to articulate its decision in

a way that was more transparent than necessary. But in addition, the abuse of discretion

standard encompasses the ability to review a trial court's factual findings or assumptions.

A trial court abuses its discretion when it relies on unsupported facts in issuing its

decision. *Hundtofte v. Encarnación*, 181 Wn.2d 1, 7, 330 P.3d 168 (2014). An abuse of

discretion also occurs if the factual assumptions made by a trial court do not meet the

requirements of the governing legal standard. *Id*. As long as some factual basis exists to

support a trial court's decision, the abuse of discretion standard is met and further

scrutiny is unwarranted, regardless of how the trial court chooses to articulate its

decision.

Viewed in the context of the applicable standard of review, Hoffman's main

argument is that the trial court used the wrong legal standard in assessing PRA penalties.

According to Hoffman, the primary consideration that must guide a trial court's PRA

penalty assessment is the presence or absence of bad faith. Hoffman argues the record

---

[2] In imposing a penalty assessment without accompanying findings of fact or conclusions of law, *Yousoufian* II deviated from a prior decision in *Armen v. City of Kalama*, 131 Wn.2d 25, 38, 929 P.2d 389 (1997), which held that a penalty decision should be supported by trial court findings.

indisputably shows the County engaged in bad faith when processing his PRA request. Thus, the trial court should have imposed a higher daily penalty amount.

Hoffman's myopic focus on bad faith is misplaced. Prior to the Supreme Court's decision in *Yousoufian* II, bad faith was considered the "principal factor" to be considered in a PRA penalty determination. 168 Wn.2d at 460. However, the *Yousoufian* II court took a more nuanced approach. *Yousoufian* II reversed a trial court's penalty assessment because it was too reliant on the absence of bad faith. Rather than focus on the presence or absence of bad faith, the Supreme Court held that trial courts should be guided by a series of aggravating and mitigating factors, only some of which address a violator's level of culpability. *See also Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 398, 314 P.3d 1093 (2013) (reversing PRA penalty decision that focused solely on bad faith).

Not only did *Yousoufian* II hold that agency culpability is merely one of a series of factors to be taken into account in assessing a PRA penalty, the court also declined to recognize bad faith as the primary type of relevant culpability. Instead, the Supreme Court listed agency "good faith" as a relevant mitigating factor and an agency's "negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA" as a relevant aggravating factor. *Yousoufian* II, 168 Wn.2d at 467-68.

Although *Yousoufian* II listed various tiers of culpability that might be attributed to an agency's PRA violation, the court declined to define the contours of each different level of culpability. As explained by the court, "culpability definitions do not lend

themselves to the complexity of PRA penalty analysis." *Id*. at 463. Rather than define each type of agency culpability that might be relevant to a trial court's penalty assessment, *Yousoufian* II took a broad approach and simply recognized that trial courts should impose "a penalty proportionate to the [agency's] misconduct." *Id*.

Given that *Yousoufian* II framed the issue of agency culpability in a broad, relative manner, we should not be overly critical of a trial court's choice of how to label agency misconduct. Indeed, *Yousoufian* II did not engage in this type of scrutiny. The trial court in *Yousoufian* II determined the defendant agency had engaged in prolonged negligence that "'amounted to a lack of good faith.'" *Id*. at 456. The trial also concluded "the [agency] did not act in 'bad faith' in the sense of intentional nondisclosure." *Id*. On appeal, both this court and the Supreme Court treated the trial court's conclusions as a determination of "gross negligence." *Id.* at 457; *see id*. at 474 (Owens, J., dissenting) (criticizing the majority for not differentiating between negligence and gross negligence). Despite the competing nature of these assessments, *Yousoufian* II did not find fault with any of the various culpability classifications that had been attributed to the agency.[3] Instead, the Supreme Court assessed the trial court's penalty decision holistically and

---

[3] Had precise labels been important, one would expect the Supreme Court would have criticized the trial court for refusing to find bad faith based merely on the absence of intentional noncompliance. After all, the court itself listed "bad faith" and "intentional" noncompliance as distinctive levels of relative culpability. *Yousoufian* II, 168 Wn.2d at 468. Yet the Supreme Court specifically upheld the trial court's finding of no bad faith in *Yousoufian* I. 152 Wn.2d at 435-36.

found the trial court's assessment inadequate in light of the totality of relevant circumstances.

The lack of precise culpability findings in the general PRA context contrasts with what is required in the circumstances of a PRA claim brought by an incarcerated person. Under RCW 42.56.565(1), a court is prohibited from awarding PRA penalties to an incarcerated person unless the court makes a specific finding of bad faith. Given the singular importance of bad faith in the context of incarcerated persons, our courts have appropriately analyzed the contours of what constitutes bad faith in the context of RCW 42.56.565(1). *See Faulkner v. Dep't of Corr.*, 183 Wn. App. 93, 332 P.3d 1136 (2014); *Francis v. Dep't of Corr.*, 178 Wn. App. 42, 313 P.3d 457 (2013). However, such precision is simply not necessary in the general PRA context.

Based on the foregoing, a trial court's choice of how to label agency noncompliance should not be the basis for affirming or reversing a penalty decision. Instead, it is sufficient under *Yousoufian* II for a trial court to recognize that culpability exists in matters of degree and that more culpable conduct merits a higher PRA penalty than less culpable violations.

Having clarified the nature of the trial court's legal inquiry, we turn to its application in the present case. Because Hoffman does not challenge any of the factual findings underlying the trial court's penalty assessment, our review is limited to the legality of the trial court's approach and overall reasonableness of its selected remedy.

We find no reversible error in the trial court's culpability assessment. Regardless of the exact nature of Hayes's individual fault, the trial court appropriately observed that the problems leading up to the County's PRA violation were attributable solely to Hayes and, given Hayes's retirement from employment, a large penalty would not be necessary to deter future PRA violations. Contrary to Hoffman's assertions, the trial court's culpability assessment need not have focused solely on Hayes's level of culpability. Hoffman cites *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 269, 884 P.2d 592 (1994) (*PAWS*) (plurality opinion) for the proposition that an agency's PRA violation should be assessed according to the agency's "weakest link." Br. of Appellant at 4. However, *PAWS* dealt only with issues of PRA liability, not a penalty. When it comes to liability, an agency's weakest link can cause a PRA violation. But because the question of penalty is guided by an overarching concern for deterrence, *Yousoufian* II, 168 Wn.2d at 462-63, it is appropriate for a trial court to consider an agency's overall level of culpability, not just the culpability of the worst actor. Looking at the County's overall level of culpability here, the trial court appropriately found that agency culpability was merely a moderately aggravating factor, thereby justifying a moderate penalty assessment.

In addition, the trial court fairly characterized the response of the sheriff's office to Hoffman's PRA request as "timely." CP at 903, 920. Unlike what may be true in some PRA violation cases, the sheriff's office maintained prompt contact with Hoffman

11

throughout the pendency of his PRA inquiry. It responded to each of Hoffman's PRA

requests within five working days. In addition, Hayes and Kundson both acted

immediately when requested by their supervisors to contact Hoffman for follow-up.

While the response of the sheriff's office to Hoffman's initial PRA request was

incomplete, that was not an independent aggravating factor. It is instead what caused the

PRA violation in the first place. Based on the failure of the sheriff's office to provide an

accurate response, the trial court awarded Hoffman daily penalties for 246 days. No

further enhancement was required based on a lack of timely compliance.

In the end, the penalty chosen by the trial court was reasonable. Although the

daily penalty was low, the court maximized the number of records eligible for the penalty

by assessing an award for each individual page that had not been disclosed. In addition,

the ultimate penalty of $15,498.00 amounted to an assessment of almost $3.00 per

Kittitas County resident on a per capita basis.[4] This is commensurate with other PRA

violation assessments. *See Zink v. City of Mesa*, ___ Wn.2d ___, 419 P.3d 847, 855

(2018). Given that Mr. Hoffman suffered no financial harm as a result of the County's

PRA violation, and that the subject matter of Mr. Hoffman's PRA request was not of

---

[4] We take judicial notice of the most recent estimates from the U.S. Census Bureau calculating the population of Kittitas County, Washington as 46,205. *Quick Facts: Kittitas County, Washington*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/kittitascountywashington,US/PST045217 (last visited July 18, 2018).

12

public importance, the trial court's overall penalty amount was not unreasonably small.[5]

The award was commensurate with the County's PRA violation and sufficient to deter

future violations. Based on this overall reasonableness, we lack any basis to disturb the

trial court's assessment.

## CONCLUSION

The trial court appropriately exercised its discretion in assessing PRA penalties

against the County. The matter is affirmed. Hoffman's request for attorney fees on

appeal is denied.

_____
Pennell, J.

I CONCUR:

_____
Korsmo, J.

_____

[5] Indeed, because the legislature has eliminated a statutory floor to PRA penalty assessments, the trial court could have refused to issue a penalty altogether. *Zink*, 419 P.3d at 855.

No. 35091-6-III

LAWRENCE-BERREY, C.J. (concurring in result) — I agree that the evidence supports the trial court's culpability findings and, because of this, its assessment of Public Records Act (PRA), chapter 42.56 RCW, penalties should be affirmed.

I write separately because the majority errs by reviewing culpability findings for an abuse of discretion. Findings are never reviewed for an abuse of discretion. Neither party argues for such a standard. Kittitas County (County) correctly argues that we should review culpability findings for substantial evidence.

A.      THE ABUSE OF DISCRETION STANDARD OF REVIEW PERTAINS ONLY TO THE TRIAL COURT'S ASSESSMENT OF THE PER DIEM PENALTY RANGE; IT DOES NOT EXTEND TO THE FACTUAL FINDINGS THAT IMPACT THE RANGE

The majority correctly notes that we review a trial court's PRA penalty determinations for an abuse of discretion. *See, e.g.*, *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 430-31, 98 P.3d 463 (2004) (*Yousoufian* I). *Yousoufian* I explains that the abuse of discretion standard comes from former RCW 42.17.340(4) (1992),[1] which provides in relevant part, "'it shall be within the discretion of the court to award such person [a penalty range] for each day that he was denied the right to inspect or copy said public record.'" *Id.* at 430. The majority errs by extending this deferential standard beyond the trial court's assessment of the per diem penalty range. The majority extends

---

[1] Recodified as RCW 42.56.550 per the Laws of 2005, chapter 274, section 103, effective July 1, 2006.

this deferential standard to any of the trial court's factual findings that impact the per diem penalty range, including the trial court's culpability findings. Nothing in RCW 42.56.550 supports this extension.

B.    IN PRA LITIGATION, CULPABILITY FINDINGS ARE MORE THAN MERE LABELS

Hoffman assigns error to the trial court's findings[2] that the County acted negligently and that he failed to prove that the County acted in bad faith. Assignments of Error 1 & 2, Br. of Appellant at 5. Throughout his brief, Hoffman extensively argues that Carolyn Hayes's actions constituted bad faith, that Kallee Knudson's actions constituted bad faith or negligence, and that the County's culpability should have been assessed in accordance with the worst actor, Hayes. Br. of Appellant at 22-43. The County responds by addressing the facts that support the trial court's culpability findings. Br. of Resp't at 25-27. The majority mostly ignores the parties' arguments by minimizing the importance of the trial court's culpability findings. Specifically, the majority holds that culpability determinations are mere labels for assessing PRA penalties.

I disagree. In PRA litigation, an agency's culpability is an important factor in assessing PRA penalties.

> "When determining the amount of the penalty to be imposed the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider."

---

[2] Findings of fact erroneously denominated as conclusions of law are reviewed as findings of fact. *State v. Ross*, 141 Wn.2d 304, 309, 4 P.3d 130 (2000).

*Yousoufian v. Office of Ron Sims, King County Exec.*, 168 Wn.2d 444, 460, 229 P.3d 735

(2010) (*Yousoufian* II) (alteration in original) (internal quotation marks omitted) (quoting

*Amren v. City of Kalama*, 131 Wn.2d 25, 37-38, 929 P.2d 389 (1997)).

Nor is culpability a mere label. A determination of culpability is of sufficient

consequence that the absence or incorrectness of a culpability finding warrants remand.

This point was made clear in *Amren*.

> The Appellant argues that certain actions by the City constitute bad
> faith and asks this court to determine the penalty amount . . . . [W]e decline
> to resolve this issue. A determination of the amount of the award
> necessitates a fact finding concerning the allegations made by the Appellant
> that the City has acted in bad faith and any potential evidence of economic
> loss incurred by the Appellant as a result of the delay. No findings of fact
> were made regarding these issues for this court to review on appeal. Since
> it is not the province of this court to engage in fact finding, we remand the
> issue of the proper penalty amount to the trial court to resolve.

*Amren*, 131 Wn.2d at 38.

C. IN PRA CASES DECIDED ON COMPETING WRITTEN EVIDENCE, WE REVIEW A
    TRIAL COURT'S FINDINGS OF FACT FOR SUBSTANTIAL EVIDENCE

The parties raise an important legal issue that is subject to reasonable debate: *In

PRA cases decided on competing written evidence, what is the appropriate standard of

factual review?* Hoffman argues that we must review a trial court's findings of fact de

novo. The County argues that we must review the trial court's findings of fact for

substantial evidence. Neither party argued for the abuse of discretion standard adopted

by the majority. Nor, in my opinion, does any precedent support it.

The PRA states, "Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo." RCW 42.56.550(3).

In *Progressive Animal Welfare Society v. University of Washington*, 125 Wn.2d 243, 253, 884 P.2d 592 (1994) (*PAWS*) (plurality opinion), the Supreme Court noted that the PRA permitted a trial court to decide the case based on competing documentary evidence. Citing former RCW 42.17.340(3)—RCW 42.56.550(3) as amended—and *Smith v. Skagit County*, 75 Wn.2d 715, 718-19, 453 P.2d 832 (1969), a plurality of the court held, "Under such circumstances, the reviewing court is not bound by the trial court's findings on disputed factual issues." *PAWS*, 125 Wn.2d at 253.

More recently, in *State v. Kipp*, 179 Wn.2d 718, 317 P.3d 1029 (2014), the Supreme Court construed *Smith* but arrived at a different standard for appellate review. The court held, "'[W]here competing documentary evidence must be weighed and issues of credibility resolved, the substantial evidence standard is appropriate.'" *Kipp*, 179 Wn.2d at 727 (quoting *Dolan v. King County*, 172 Wn.2d 299, 310, 258 P.3d 20 (2011)).

There is obvious tension between *PAWS* and *Kipp*. Both cases discuss appellate review of trial court findings based on competing documentary evidence. Both cases arrive at different standards of review. For two reasons, I believe *Kipp* is correct.

First, the statement in *PAWS* is dicta. There, the Supreme Court was not asked to review any findings of fact. Instead, the lower court granted summary judgment, and a plurality of the court reversed because it found there were genuine issues of material fact. *PAWS*, 125 Wn.2d at 253; *see also Fisher Broadcasting-Seattle TV LLC v. City of*

*Seattle*, 180 Wn.2d 515, 521-22, 326 P.3d 688 (2014) (reviewing PRA summary judgment de novo); *Gendler v. Batiste*, 174 Wn.2d 244, 250-51, 274 P.3d 346 (2012) (reviewing PRA summary judgment de novo).

Second, RCW 42.56.550(3)'s grant of de novo review likely applies only to a superior court's review of an agency's actions. A court's goal in interpreting a statute is to effectuate the legislature's intent. *Burns v. City of Seattle*, 161 Wn.2d 129, 140, 164 P.3d 475 (2007). We effectuate the legislative intent by ascertaining the plain meaning of the statute. *Id.* "Plain meaning [of a statute] is discerned from viewing the words of a particular provision in the context of the statute in which they are found, together with related statutory provisions, and the statutory scheme as a whole." *Id.*

RCW 42.56.550 provides in relevant part:

**Judicial review of agency actions.** (1) Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, *the superior court* . . . may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. . . .
(2) Upon the motion of any person who believes that an agency has not made a reasonable estimate of the time that the agency requires to respond to a public record request or a reasonable estimate of the charges to produce copies of public records, *the superior court* . . . may require the responsible agency to show that the estimate it provided is reasonable. . . .
(3) Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo. Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest . . . . *Courts may examine any record in camera in any proceeding brought under this section. The court may conduct a hearing based solely on affidavits.*
(4) . . . [I]t shall be within the discretion of *the court* to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

5

(Emphasis added.)

In discussing judicial review, subsections (1) and (2) explicitly describe superior court authority, not appellate court authority. Subsections (3) and (4) strongly imply superior court authority, not appellate court authority. *See also Yousoufian* I, 152 Wn.2d at 430-31 (construing former RCW 42.17.340(4), now RCW 42.56.550(4), as not describing appellate court authority).

Also, only superior courts review agency actions. Appellate courts review superior court decisions. If the legislature intended appellate courts to exercise de novo review, RCW 42.56.550(3) would read, "Judicial review of all agency actions *and trial court decisions* . . . shall be de novo." But RCW 42.56.550(3) does not say this.

For these reasons, I would construe RCW 42.56.550(3)'s grant of de novo review of agency actions as descriptive of superior court review, not appellate court review.

Here, the trial court made findings of fact after reviewing competing documentary evidence. In accordance with *Kipp*, I would review the trial court's challenged findings for substantial evidence. But the appropriate standard of review is open for judicial debate and awaits clarification from our highest court.

Lawrence-Berrey, C.J.

6