

This opinion was
filed for record
at 8am on Sept 26, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RANDALL HOFFMAN, | ) | No. 96286-3 |
| | ) | |
| Petitioner, | ) | EN BANC |
| | ) | |
| v. | ) | Filed _____ SEP 2 6 2019 _____ |
| | ) | |
| KITTITAS COUNTY, a local agency and | ) | |
| the KITTITAS COUNTY SHERIFF'S | ) | |
| OFFICE, a local agency, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

FAIRHURST, C.J.—Penalty awards by the trial court in Public Records Act

(PRA)[1] cases are reviewed for abuse of discretion. In *Yousoufian* II,[2] we set forth a

nonexclusive list of aggravating and mitigating factors, including agency bad faith,

to guide trial courts as they exercise discretion. Petitioner Randall Hoffman argues

that the trial court's finding that the agency respondents lacked bad faith is

reviewable de novo. We decline Hoffman's invitation to carve out separate standards

---

[1] Ch. 42.56 RCW.
[2] *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (2010) (*Yousoufian* II).

of review for specific *Yousoufian* II factors, and we hold that the trial court did not abuse its discretion by imposing a $15,498 penalty. We affirm the Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

A.    Factual background

Because neither party challenges the trial court's factual findings, we accept them as verities on appeal. *Yousoufian* II, 168 Wn.2d at 450. On June 29, 2015, Hoffman submitted a public records request to the Kittitas County Sheriff's Office seeking all police reports, including photos and videos, referencing an individual named Erin Schnebly. The request was processed by Carolyn Hayes, the office's public records clerk. Hayes performed an initial search in the office's electronic "Spillman" case management system and located 7 responsive police reports. Clerk's Papers (CP) at 891. Hayes did not locate any photos or videos. A thorough review of the reports in the Spillman system and the office's physical storage would have also revealed 95 photographs and 2 videos related to the responsive reports.

Hayes telephoned Hoffman for clarification. She was concerned that she had missed something because she could not find any involvement by Hoffman in the incidents and had not found any photos or videos. Based on an interpretation of RCW

42.56.050[3] that the parties now agree was erroneous, Hayes told Hoffman that because he was not a party involved in the reports, she could not provide to him the majority of the documents requested. Though the parties submitted conflicting evidence on this point, the trial court found that Hoffman, relying on this misinformation, agreed to limit his request to the responsive records' "face sheets" indicating the type of incident, date, and location. CP at 896. Hayes then sent Hoffman heavily redacted copies of the face sheets and an exemption log citing the inapplicable RCW provision. She did not provide the full police reports, nor did she provide the photos and videos that she had failed to locate.

Hayes was at that time preparing for retirement and working only one or two days per week. Earlier that month, she had begun training Kallee Knudson as her public records clerk replacement. Knudson overheard part of the phone conversation and was confused by Hayes' handling of the request. Knudson asked Hayes to explain her reasoning and did not fully understand Hayes' response but ultimately deferred to Hayes' experience.

---

[3] RCW 42.56.050 reads:

> A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in [the PRA], is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public. The provisions of this chapter dealing with the right to privacy in certain public records do not create any right of privacy beyond those rights that are specified in this chapter as express exemptions from the public's right to inspect, examine, or copy public records.

3

In September 2015, Knudson came across the paper copy of Hoffman's request while cleaning out Hayes' desk. She was still troubled by how it had been handled and expressed her concerns to her supervisors, Kim Dawson and Sergeant Steve Panattoni. On their advice, she called Hoffman to follow up. Hoffman informed her that "he did get his request," but Knudson did not explain her concerns or express her belief that he was entitled to more documents. *Id.* at 893. Dawson and Panattoni then spoke with Hayes, who also called Hoffman to confirm he had received what he needed. Hoffman said that he had but that he was curious about other incidents that he thought might not have been reflected in what he received. Hayes remained on the phone while she looked for further reports and, finding none, discussed that the incidents might not have been reported to the police.

Hayes retired in October 2015. In February 2016, Hoffman visited the office. He told Knudson that he should have gotten more documents, that he could sue, and that the reason he had not received all responsive records was that Hayes and Schnebly were drinking buddies.[4]

Hoffman returned on February 29, 2016. He resubmitted his original request and submitted a second request not at issue in this appeal. The next day, Knudson

---

[4] The parties later stipulated that a thorough investigation had failed to indicate any relationship between Hayes and the Schnebly family, and the trial court concluded there was no evidence of any such relationship.

4

provided all 7 responsive police reports with minor redactions (totaling 29 pages), as well as the 2 videos and 95 photos, free of charge.

B.    Procedural history

Hoffman then sued respondents Kittitas County and the Kittitas County Sheriff's Office (hereinafter collectively County), alleging that Hayes' initial response violated the PRA.[5] The parties agreed to a bench trial based on stipulated and conceded facts, with affidavits, declarations, and other documentary evidence submitted to litigate contested facts. No oral testimony was given.

The trial court found that the County had violated the PRA by improperly redacting and withholding records for 246 days—that is, from June 29, 2015 (the date of Hoffman's original request) to March 1, 2016 (when Knudson responded to the renewed request). The court issued a separate order setting the amount of the County's penalty after weighing the aggravating and mitigating factors set forth in *Yousoufian* II, 168 Wn.2d at 463-68. The court found, among other things, that the County had acted negligently, but not in bad faith. The court imposed a penalty of $0.50 per day per page/photo/video,[6] for a total of $15,498.00. The court also

---

[5] Hoffman did not challenge Knudson's March 1, 2016 response to his resubmittal of the original records request.

[6] Measured in this way, there were 126 responsive documents (29 pages of police records, 95 photos, and 2 videos). Hence, the penalty amounted to $63 overall per day.

5

awarded reasonable attorney fees to Hoffman as a prevailing party against an agency in a PRA action, as required by RCW 42.56.550(4).

Hoffman appealed the penalty award (but not the attorney fees award). *Hoffman v. Kittitas County*, 4 Wn. App. 2d 489, 422 P.3d 466 (2018). Hoffman's primary argument before the Court of Appeals was that the trial court erred in finding, pursuant to its analysis of the *Yousoufian* II factors, that the County had not acted in bad faith. As a result, Hoffman argued, the penalty amount was too low.[7] Hoffman also asserted that the trial court's determination of the County's culpability was subject to de novo review.

The Court of Appeals reviewed the trial court's overall penalty imposition under an abuse of discretion standard, "f[ound] no reversible error in the trial court's culpability assessment," and affirmed the penalty. *Hoffman*, 4 Wn. App. 2d at 498. "Looking at the County's overall level of culpability here," the majority held that "the trial court appropriately found that agency culpability was merely a moderately aggravating factor, thereby justifying a moderate penalty assessment." *Id.* at 499.

---

[7] Hoffman also argued below that the trial court erroneously applied the *Yousoufian* II mitigating factor of "'the agency's prompt response or legitimate follow-up inquiry for clarification.'" Br. of Appellant at 45 (quoting *Yousoufian* II, 168 Wn.2d at 467); *see also Hoffman*, 4 Wn. App. 2d at 499 (rejecting this argument). On appeal to the Washington State Supreme Court, Hoffman appears to have abandoned this argument. *See* Pet. for Review; Suppl. Br. of Pet'r.

## II. ANALYSIS

Hoffman argues that when the factual findings in a PRA action that was tried on solely documentary evidence are accepted as verities, an appellate court should review de novo the trial court's determination of agency bad faith (or, as in this case, lack thereof) that underlies its penalty assessment. He urges us to review de novo the trial court's determination that the County lacked bad faith, find that the County acted in bad faith, and remand to the trial court for reassessment of the proper penalty amount.

We affirm the Court of Appeals. We hold that our task under the PRA is to review the overall penalty assessment under an abuse of discretion standard. Using this standard of review, we hold that the trial court did not abuse its discretion in setting a per diem penalty of $0.50 per page/photo/video.

A.   An appellate court's task is to review the trial court's overall PRA penalty assessment for abuse of discretion

We first consider and reject Hoffman's claim that we should review de novo the trial court's determination that the County lacked bad faith. Trial courts "shall" award "all costs, including reasonable attorney fees" to persons who prevail against an agency in a PRA action. RCW 42.56.550(4). In contrast and "[i]n addition, it shall be *within the discretion* of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." *Id.* (emphasis added). This additional, discretionary award

is properly characterized as a penalty. *Amren v. City of Kalama*, 131 Wn.2d 25, 35-37, 929 P.2d 389 (1997). "[T]he plain language of the PRA confers great discretion on trial courts to determine the appropriate penalty for a PRA violation." *Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus.*, 185 Wn.2d 270, 278, 372 P.3d 97 (2016). "Since enacting the PRA, the legislature has afforded courts more—not less—discretion in setting penalties for PRA violations," first by changing the penalty range from not more than $25 to between $5 and $100, and then by removing the mandatory minimum penalty. *Id.* at 278-79 (citing LAWS OF 1992, ch. 139, § 8; LAWS OF 2011, ch. 273, § 1).

In recognition of this statutory grant of discretion, it is now well settled law that "'[t]he trial court's determination of appropriate daily penalties is properly reviewed for an abuse of discretion.'" *Yousoufian II*, 168 Wn.2d at 458 (quoting *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 431, 98 P.3d 463 (2004) (*Yousoufian I*)); *see also Wade's*, 185 Wn.2d at 277; *Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 397, 314 P.3d 1093 (2013); *King County v. Sheehan*, 114 Wn. App. 325, 350-51, 57 P.3d 307 (2002).

To guide trial courts in their exercise of discretion, we set forth "relevant factors for trial courts to consider in their penalty determination" in *Yousoufian II*. 168 Wn.2d at 464. We specified seven "mitigating factors that may serve to decrease

8

the penalty"[8] and nine "aggravating factors that may support increasing the penalty."[9] *Id.* at 467-68. We did so to "provide[] guidance to trial courts, more predictability to parties, and a framework for meaningful appellate review." *Id.* at 468. But we "emphasize[d] that the factors may overlap, are offered only as guidance, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations. Additionally, no one factor should control." *Id.* And we cautioned that "[t]hese factors should not infringe upon the considerable discretion of trial courts to determine PRA penalties." *Id.* In other words, *Yousoufian*

---

[8] The mitigating factors are

(1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

168 Wn.2d at 467 (footnotes omitted).

[9] The aggravating factors are

(1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

168 Wn.2d at 467-68 (footnotes omitted).

9

II articulated guidelines for trial courts deciding whether to impose a penalty (and if so, how much) for a PRA violation.

Hoffman concedes that "[t]he ultimate penalty that a trial court selects under the PRA is reviewed for abuse of discretion." Suppl. Br. of Pet'r at 11. But, he contends, "that does not mean that all *subsidiary* issues—issues that influence the selection of the penalty—are reviewed for abuse of discretion." *Id.* The subsidiary issue of the County's bad faith is, he argues, a mixed question of law and fact. Because the facts are at this stage uncontested and involved no determinations of live witness credibility, this leaves only a legal question—specifically, the application of the uncontested facts to the legal standard of bad faith—that is properly reviewed de novo.

Hoffman's argument relies on three Court of Appeals cases interpreting and applying RCW 42.56.565(1). *See Francis v. Dep't of Corr.*, 178 Wn. App. 42, 313 P.3d 457 (2013) (reviewing de novo the trial court's determination under RCW 42.56.565(1) that the Department of Corrections acted in bad faith); *Faulkner v. Dep't of Corr.*, 183 Wn. App. 93, 332 P.3d 1136 (2014); *Adams v. Dep't of Corr.*, 189 Wn. App. 925, 361 P.3d 749 (2015). That statute, first passed in 2011, prohibits courts from awarding PRA penalties to correctional facility inmates "unless the court finds that the agency acted in bad faith" in its violation of the PRA. RCW 42.56.565(1). The cases cited by Hoffman "provide guidance in applying the bad

faith standard in RCW 42.56.565" because under that amendment to the PRA, "a finding of bad faith is now a threshold that must be met before penalties can be awarded to an inmate." *Faulkner*, 183 Wn. App. at 103; *cf. Amren*, 131 Wn.2d at 37 ("a showing of bad faith . . . is not required" to award a PRA penalty to a noninmate). In other words, when the plaintiff in a PRA action is an inmate, the trial court must engage in an extra analytical step before awarding a penalty: it must find that the agency (typically, the Department of Corrections) acted in bad faith. If—and only if—the trial court finds that the agency acted in bad faith, it then engages in the normal penalty assessment analysis as guided by *Yousoufian* II.

We have not yet had occasion to review the Court of Appeals' inmate PRA holdings, and this noninmate case is not the appropriate vehicle for doing so. They interpret RCW 42.56.565, a statute that is inapplicable here. In this context, we are instead guided by RCW 42.56.550 and our case law interpreting that statute.

RCW 42.56.550(4) states that "it shall be within the *discretion* of the court to award" a penalty "not to exceed one hundred dollars" per diem to a prevailing PRA plaintiff. (Emphasis added); *see also Wade's*, 185 Wn.2d at 278 ("[T]he plain language of the PRA confers great discretion on trial courts to determine the appropriate penalty for a PRA violation."). Hoffman asks us to engage in de novo review of two of the *Yousoufian* II factors that guide trial courts as they exercise this discretion, "the agency's good faith, honest, timely, and strict compliance with all

11

PRA procedural requirements and exceptions," a mitigator, and the agency's "negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA," an aggravator. 168 Wn.2d at 467-68 (footnote omitted).

But as we have said before, RCW 42.56.550(4)'s grant of discretion in awarding PRA penalties "is meaningful only if appellate courts review the trial court's imposition of that penalty under an abuse of discretion standard of review." *Yousoufian* I, 152 Wn.2d at 431. "[A]n appellate court's 'function is to review claims for abuse of trial court discretion with respect to the imposition or lack of imposition of a penalty, not to exercise such discretion ourselves.'" *Id.* at 430 (quoting *Sheehan*, 114 Wn. App. at 350-51). The *Yousoufian* II factors are judicially crafted guidelines that overlay a statutory grant of trial court discretion. They "may overlap, *are offered only as guidance*, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations." *Yousoufian* II, 168 Wn.2d at 468 (emphasis added).

Hoffman correctly notes our holding that "'[w]hen determining the amount of the penalty to be imposed the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider.'" *Id.* at 460 (second alteration in original) (internal quotation marks omitted) (quoting *Amren*, 131 Wn.2d at 37-38). But that alone does not entitle him to de novo review of this *Yousoufian* II factor. He ignores our holding that a trial court abuses its discretion by focusing exclusively

12

on bad faith without considering either the remaining *Yousoufian* II factors or any other appropriate considerations. *Sargent*, 179 Wn.2d at 397-98; *see also Yousoufian* II, 168 Wn.2d at 460-61 (stating that "no showing of bad faith is necessary before a penalty is imposed" and that "a strict and singular emphasis on good faith or bad faith is inadequate to fully consider a PRA penalty determination"). Engaging in de novo review of the bad faith factor would risk distorting its role as one piece of a holistic, discretionary determination of the appropriate penalty amount.

Trial courts' adherence to the guidelines we set forth in *Yousoufian* II helps ensure that they do not abuse their discretion. *Cf. Sargent*, 179 Wn.2d at 397-98 (holding that the trial court abused its discretion by focusing exclusively on agency bad faith). Articulating the basis for a penalty award in terms of the *Yousoufian* II framework helps trial courts spell out their reasoning in a way that facilitates meaningful appellate review. *Yousoufian* II, 168 Wn.2d at 468. But appellate review is undertaken using an abuse of discretion standard—not by engaging in piecemeal de novo review of individual *Yousoufian* II factors.

As a reviewing court, our task is to review the trial court's overall penalty assessment for abuse of discretion. We affirm the Court of Appeals' holding that an appellate court reviewing a trial court's PRA penalty assessment should review the overall penalty decision "holistically," "f[inding] the trial court's assessment

13

inadequate [or adequate] in light of the totality of relevant circumstances." *Hoffman*, 4 Wn. App. 2d at 497-98.

B.     The trial court did not abuse its discretion in awarding a penalty of $0.50 per page/photo/video per day

Having discerned the appropriate standard of review, we turn to Hoffman's claim that the penalty was too low. Hoffman asks us to hold that the County responded in bad faith to his initial records request and to remand to the trial court for a reassessment of the appropriate penalty amount in light of this holding.

We holistically review the overall penalty assessment for abuse of discretion. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons." *Yousoufian* II, 168 Wn.2d at 458. "A trial 'court's decision is "manifestly unreasonable" if "the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'"'" *Id.* at 458-59 (quoting *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990)))). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *Rohrich*, 149 Wn.2d at 654 (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)); *see also State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

14

The trial court entered an order expressly considering each of the *Yousoufian* II aggravating and mitigating factors. The trial court found three mitigators. First, it found that the evidence supported as a mitigating factor "the agency's prompt response or legitimate follow-up inquiry for clarification." CP at 904 (boldface omitted); *Yousoufian* II, 168 Wn.2d at 467. The court noted that both the initial response and subsequent response were processed within five working days. It is also worth noting that Hayes promptly telephoned Hoffman for clarification. And when Knudson raised concerns again in September, both she and Hayes immediately called Hoffman at Panattoni's and Dawson's urging.

Second, the court found that "proper training and supervision of the agency's personnel" was a mitigating factor. CP at 905 (boldface omitted); *Yousoufian* II, 168 Wn.2d at 467. The court found that "[t]he evidence demonstrates an on-going and consistent process of education, supervision, and access to legal counsel to seek assistance," with "both internal and external training available to employees." *Id.* at 905. The record bears this out. *See, e.g.*, CP at 397-98 (Hayes received both internal and external PRA response training), 457 (Knudson describing "[r]eaching out to . . . Legal" when she was uncertain how to interpret RCW provisions), 471-72 (discussing Knudson's formal training), 496 (Hayes' training log), 572-74 (Kittitas County Sheriff's Office public records release policy manual and training materials). The processing of Hoffman's request was not a result of systemic problems.

15

Third, the court found that "the existence of agency systems to track and retrieve public records" was a mitigator. CP at 907 (boldface omitted); *Yousoufian II*, 168 Wn.2d at 467. The record is replete with references to "DaRT," an internal system created by the County's information technology department to track and aid responses to PRA requests. The court reasoned that "[t]his independent system, separate and apart from the [Spillman] case management systems demonstrates a commitment on the part of the county to successfully" provide proper, timely responses to PRA requests. CP at 907. The court viewed this as a mitigating factor "because the error was human error, not a function of the agency systems." *Id.*

The trial court also found three aggravating factors. First, the court found that the evidence supported an aggravating factor of "lack of strict compliance by the agency with all the PRA procedural requirements and exceptions." *Id.* (boldface omitted); *Yousoufian II*, 168 Wn.2d at 467. The court noted the 246 day delay between Hoffman's initial request and Knudson's ultimate provision of all responsive records.

Second, the court found that the "unreasonableness of any explanation for noncompliance by the agency" was an aggravator, noting Hayes' erroneous reliance

16

on the apparently inapplicable PRA provision regarding privacy.[10] *Id.* at 908 (boldface omitted); *Yousoufian II*, 168 Wn.2d at 468.

Third, the court found that "negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency" was an aggravator. *Id.* at 908 (boldface omitted); *Yousoufian II*, 168 Wn.2d at 468. Specifically, the court ruled that "[t]he evidence supports negligent noncompliance with the PRA by [the County] because of the duties owed by Clerk Hayes and the breach of those duties .... However, the evidence does not support a higher level of culpability." *Id.* The court reasoned that Knudson did not act negligently because "[s]he continued to act appropriately in raising concerns and was entitled to rely upon Hoffman's response to her phone call." *Id.* As to the involvement of supervisors Panattoni and Dawson, the court reasoned that "internal deliberations about a non-standard response demonstrate proper concern and supervision, especially coupled with reaching out to the requestor to ascertain if they got what he needed." *Id.* at 908-09.

These are the culpability findings—agency negligence but a lack of bad faith—that Hoffman asks us to review de novo. But under the abuse of discretion standard of review, our task is less to scrutinize the particular culpability label adopted than to determine whether a reasonable person could find that the supported

---

[10] Since the parties agree that Hayes' reliance on RCW 42.56.050 was erroneous, we assume, without deciding, that it was.

17

facts suggest a level of culpability that, taken together with the remaining *Yousoufian* II factors and other appropriate considerations, justifies the penalty imposed.

Finally, regarding the aggravating factor of "a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case," *Yousoufian* II, 168 Wn.2d at 468, the trial court found that compared with the facts in other reported Washington cases, "[t]he evidence does not support a finding that this is an egregious violation" in terms of its severity, its duration, or the number of records in question. CP at 909.

In light of all this, the trial court imposed a penalty of $0.50 per page/photo/video per day for 246 days, totaling $15,498.00. This penalty was reasonable and not an abuse of discretion. Hoffman suffered no financial harm as a result of the County's PRA violation, and the subject matter of his request was not of public importance. *Hoffman*, 4 Wn. App. 2d at 500; *Yousoufian* II, 168 Wn.2d at 468 (listing these as aggravating factors). "Although the daily penalty was low, the court maximized the number of records eligible for the penalty by assessing an award for each individual page." *Hoffman*, 4 Wn. App. 2d at 499. The $15,498.00 penalty "amounted to an assessment of almost $0.34 per Kittitas County resident on a per capita basis," which "is commensurate with other PRA violation assessments." *Id.* at 500. "[P]enalty awards against jurisdictions in PRA cases rarely exceed more than a few dollars per resident." *Zink v. City of Mesa*, 4 Wn. App. 2d 112, 128, 419 P.3d

18

847, *review denied*, 192 Wn.2d 1004 (2018). And even the award in *Yousoufian* II—whose facts were far more egregious than here, involving "years of delay and misrepresentation on the part of the county"[11]—only amounted to $0.19 per resident. *Id.*

As to deterrence, "the trial court appropriately observed that the problems leading up to the County's PRA violation were attributable solely to Hayes and, given Hayes's retirement from employment, a large penalty would not be necessary to deter future PRA violations." *Hoffman*, 4 Wn. App. 2d at 498. Hayes' negligence was due to her idiosyncratic understanding of a particular PRA provision rather than to systemic lapses in training, supervision, or work flow. Indeed, the record shows every indication that her successor, Knudson, is a model PRA responder. It also reveals ongoing internal and external training, the availability of legal counsel when needed, and a system to help employees track their PRA request responses and to remind them of upcoming deadlines.

In sum, "[t]he award was commensurate with the County's PRA violation and sufficient to deter future violations." *Id.* at 500.

### III. CONCLUSION

An appellate court reviews the trial court's overall penalty assessment for abuse of discretion. We decline Hoffman's invitation to review de novo the

---

[11] *Yousoufian* II, 168 Wn.2d at 456.

subsidiary issue of agency culpability. The $15,498 penalty was not an abuse of discretion.[12] We affirm.

---

[12] Because Hoffman has not prevailed on appeal, we deny his request for appellate costs, including reasonable appellate attorney fees. *See* RCW 42.56.550(4).

20

Fairhurst, C.J.

WE CONCUR:

_____
Madsen, J.

_____

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____

_____
Yu, J.