**FILED**
**DECEMBER 3, 2024**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 40228-2-III |
| | ) | (consolidated with |
| D.J.A., B.L.A., and N.N.A. | ) | No. 40229-1-III, |
| | ) | No. 40230-4-III) |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

PENNELL, J. — T.H. appeals a dependency disposition order requiring supervised visitation with her three children and granting the parties discretion to decide visitation locations. We affirm.

FACTS

T.H. is the mother of three children, D.J.A., B.L.A., and N.N.A., born between 2010 and 2013. In 2021, T.H. and her children were living in Oregon when the children were removed from her care and placed with their father in Yakima, Washington. The reason for the intervention appears to have been domestic violence between T.H. and a boyfriend. In approximately July 2022, T.H. moved to Yakima where she lacked housing and often lived in her vehicle.

In December 2022, T.H.'s three children were removed from their father's home due to drug use, domestic violence, and unsanitary conditions. The Department filed a dependency petition and the children were placed with T.H.'s longtime family friend.

T.H.'s life has been marked by violence and instability. Her father sexually assaulted her when she was a child. As a teenager and adult, she has had numerous violent relationships. T.H. admits to being a drug "addict," though she considers her prior drug usage just an "experiment." Rep. of Proc. (RP) at 143. T.H. does not participate in drug treatment. She is often unhoused and she has several untreated mental health conditions. With few exceptions, T.H. has generally declined government-sponsored offers of assistance.

Although T.H. claims her current romantic relationship is healthy, her problems with domestic violence are ongoing. In August 2023, T.H. was sexually assaulted by a former romantic partner. According to T.H., her former partner "has a stalking disorder." *Id*. at 71. T.H. finds it difficult to keep herself safe from her former partner because he "will go out of his way to make contact" with her. *Id*. at 137.

T.H. has also exhibited some lack of insight regarding dangers to her children. For example, T.H. has allowed her father to have unsupervised contact with her young daughter.

During the pendency of the dependency petition, the Department offered T.H. a variety of services. These included domestic violence counseling, housing, a substance use disorder assessment, urinalysis exams, and gift cards for food. With the exception of the gift cards, T.H. has declined assistance and has refused to participate in drug testing.

T.H. has been ordered to engage in supervised visitations with her children three times a week. Her attendance has been inconsistent, which has required the Department to initiate several new referrals. T.H.'s visits with her children are supposed to last two hours, but they often end early. According to T.H., this is because the children become bored. The visitation room consists merely of an office with a table, chairs, and a microwave. T.H. claims her visits would last longer if she and the children had some activities. She would like to take her children somewhere fun for visitation, such as an outdoor park, swimming pool, or trampoline park. But T.H.'s suggestions of alternate locations and activities have been rejected as unsafe.

A dependency fact-finding hearing was held in October 2023. The children's father did not participate, as he stipulated to an agreed order of dependency.

During the hearing, the Department's witnesses testified consistent with the above summary. According to the Department, T.H.'s visits need to be supervised because there are concerns about drug use and T.H. engaging her children in inappropriate

conversations. There are also concerns about T.H.'s ability to protect herself and her children from others who may interfere with the visits.

The juvenile court found all three children dependent and ordered T.H. to continue with supervised visitation. Visitation is to occur at the Department or an "approved location." Clerk's Papers (CP) at 378. Additionally, the Department and a court-appointed guardian ad litem "have joint discretion to modify the visitation schedule, including changing visitation site, increasing frequency or duration and decreasing level of supervision." *Id.*

## ANALYSIS

On appeal, T.H. does not challenge the order of dependency. Rather, she challenges the juvenile court's disposition as to visitation.

"Visitation is the right of the family." RCW 13.34.136(2)(b)(ii)(A). The legislature has recognized that "[e]arly, consistent, and frequent visitation is crucial for maintaining parent-child relationships and making it possible for parents and children to safely reunify." *Id.* Outside of risks to a child's "health, safety, or welfare," a juvenile court cannot limit visitation. RCW 13.34.136(2)(b)(ii)(B), (C). Furthermore, "[v]isitation must occur in the least restrictive setting and be unsupervised unless the presence of threats or

danger to the child requires the constant presence of an adult to ensure the safety of the child." RCW 13.34.136(2)(b)(ii)(C).

A juvenile court's visitation decision is reviewed for abuse of discretion. *In re Dependency of Tyler L.*, 150 Wn. App. 800, 804, 208 P.3d 1287 (2009). This is a very deferential standard. *Hoffman v. Kittitas County*, 4 Wn. App. 2d 489, 495, 422 P.3d 466 (2018). "Because a juvenile court must evaluate a considerable amount of information and weigh the credibility of numerous witnesses in order to balance the best interests of a child against a parent's rights, we place 'very strong reliance' upon" a juvenile court's visitation decision. *In re Dependency of T.L.G.*, 139 Wn. App. 1, 15, 156 P.3d 222 (2007) (quoting *In re Dependency of K.R.*, 128 Wn.2d 129, 146, 904 P.2d 1132 (1995)). A court's exercise of discretion will be sustained on appeal unless it is "manifestly unreasonable," or based on "untenable grounds" or "untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

T.H. argues the juvenile court abused its discretion as to visitation in two ways: (1) the court ordered visitation be supervised, rather than monitored and (2) the court did not direct the Department to order visitation occur in a setting that would allow for family activities. Each claim is addressed in turn.

*Supervised vs. monitored visitation*

Department policies distinguish between "supervised" and "monitored" visitation. Supervised visitation requires "an approved adult to maintain line of sight and sound" with the parent so that there can be an intervention "if needed." Washington State Department of Children, Youth & Families, *Policies and Procedures 1120. Safety Assessment*, https://www.dcyf.wa.gov/1100-child-safety/1120-safety-assessment [https://perma.cc/QG7N-D3BR]. In contrast, monitored supervision only requires "periodic" observations, typically "every 15 or 20 minutes." *Id.*; RP at 289.

The juvenile court had tenable reasons for ordering T.H.'s visitation to be supervised, rather than monitored. At the time of the fact-finding hearing, T.H. was facing an ongoing danger from her former romantic partner. The partner was actively stalking T.H. and he had sexually assaulted her approximately three months before the hearing. T.H. admitted she found it difficult to keep herself safe from her former partner. The danger posed by T.H.'s former partner jeopardized not only her health and safety, but also that of others around her, including her children. Periodic check-ins by a supervision monitor would not be sufficient to protect T.H.'s children from the risk posed by her former partner. An individual focused on stalking and victimizing T.H. would be able to cause irreparable harm in far less than 15 to 20 minutes. To make matters worse, T.H. has

6

exhibited poor judgment with respect to how to keep her children safe. She has left her children in the unsupervised care of her own father, despite the fact that he sexually assaulted T.H. as a child and is currently required to register as a sex offender. T.H.'s lack of judgment elevates the concern that she would be unable to appreciate the danger to her children, should an unauthorized person attempt to intervene during her visitation time.

The Department claims supervised visitation was also warranted because of T.H.'s tendency to engage her children in inappropriate adult conversations, and because she is not participating in drug testing or treatment. These reasons, in and of themselves, do not appear sufficient. The Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship, chapter 13.34 RCW, requires there be "threats or danger to the child" in order to justify supervised visitation. RCW 13.34.136(2)(b)(ii)(C). The Department fails to explain how T.H.'s inappropriate conversations and unverified abstinence from controlled substances rises to the level of a "threat" or "danger" to her children. The use of the words "threat" and "danger" convey notions of physical, as opposed to emotional, harm. *See* BLACK'S LAW DICTIONARY 493, 1789 (12th ed. 2024). Furthermore, our case law has specified that the risks posed by a parent must be "concrete" instead of hypothetical. *Dependency of T.L.G.*, 139 Wn. App. at 18.

7

Regardless of whether the Department would be able to limit visitation purely based on T.H.'s inappropriate conversations or refusal to participate in drug testing and treatment, the threats to physical safety posed by T.H.'s former partner are sufficient to justify supervised visitation. It should be noted that the disposition order grants the Department discretion to liberalize the terms of visitation. Thus, T.H. will not necessarily be limited to supervised visitation going forward.

*Visitation setting*

Given the requirement that visitation occur "in the least restrictive setting," RCW 13.34.136(2)(b)(ii)(C), T.H. argues that the trial court should have ordered the Department to facilitate visitation outside of an office setting. The Department responds that the current disposition order is sufficient. The order grants the parties discretion to decide on an "approved location" for visitation. CP at 378. According to the Department, the problem faced by T.H. is that none of her suggestions for alternative visitation locations have satisfied the Department's safety concerns.

Under the current record, the juvenile court did not abuse its discretion in declining to order visitation take place outside of an office setting. It is unfortunate that, at the time of the fact-finding hearing, none of T.H.'s suggested visitation locations were deemed appropriate. However, it is not apparent that this problem is intractable. T.H.'s

8

dependency is ongoing. One would expect that as T.H. continues to work with the Department and participate in visitation, the parties will be able to agree on alternate visitation locations. Should the Department continue to decline suggested alternatives, the juvenile court may be faced with a record that would require direct management of visitation locations. But at this point, it is reasonable for the court to conclude that the specifics of visitation locations should be left to the parties.

## CONCLUSION

The disposition order requiring supervised visitation and granting the parties discretion to agree on visitation locations is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Fearing, J.                    Cooney, J.

9